Estate of D. Byrd Gwinn, Deceased, James A. Gwinn, Adminis-
trator, Petitioner, *v.* Commissioner of Internal Revenue,
Respondent.

Docket No. 48095.    Filed October 18, 1955.

*L. E. Woods, Jr., Esq.,* and *Robert K. Emerson, Esq.,* for the
petitioner.

*Alvin J. Ivers, Esq.,* for the respondent.

34

36

OPINION.

BRUCE, *Judge:*

*Issue 1.*

The first question presented is the value of the 360 shares of the common stock of Gwinn Bros. & Co. owned by D. Byrd Gwinn at the date of his death, January 15, 1951. In the estate tax return filed for the estate this stock was valued at $40 per share. The Commissioner increased the value to $195 per share. We have carefully considered all of the relevant facts and circumstances presented by the evidence herein and have found as a fact that the fair market value of the stock in question as of the basic date was $60 per share. This finding is dispositive of this issue.

*Issue 2.*

At the time of his death decedent owned life insurance policy No. 235883 issued by the New England Life Insurance Co. in the face amount of $10,000. His wife, Caroline A. Gwinn, was designated primary beneficiary of the policy. Under the terms of the policy decedent retained, among other things, the right to change the beneficiary and the power to assign the policy as collateral security.

On January 15, 1951, this policy, along with other life insurance policies of decedent (the face value of which was not shown), was pledged with a bank as collateral security for an indebtedness of the decedent to the bank in the amount of $20,000. After decedent's death the administrator paid the indebtedness out of the property of the estate and Caroline A. Gwinn received the proceeds of the policy No. 235883.

The issue for decision is whether the proceeds of this life insurance policy qualify for the marital deduction afforded by section 812 (e), Internal Revenue Code of 1939.[2] The widow is not the only heir of this intestate, and the marital deduction will be larger if the proceeds of the insurance policy go in their entirety to her rather than augment the net estate, of which she would receive only a part, by being used in whole or in part to discharge the bank loan for which the policy was pledged as collateral.

---

[2] SEC. 812. NET ESTATE.
For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—
&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;
(e) BEQUESTS, ETC., TO SURVIVING SPOUSE.—
 (1) ALLOWANCE OF MARITAL DEDUCTION.—
  (A) In General.—An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

Respondent contends that the assignment and pledge of this policy constitutes an "incumbrance" within the meaning of section 812 (e) (1) (E) (ii), Internal Revenue Code of 1939,[3] and that this "incumbrance" must be taken into account in determining the value of the interest in the property passing to the surviving spouse.

Respondent argues that the language "in any manner" contained in this section precludes all property which is incumbered without exception and therefore, as the amount of the incumbrance ($20,000) was greater than the value of the policy ($10,000),[4] for the purpose of the marital deduction the policy had a value of zero. We do not agree with respondent's determination under the facts and circumstances here presented.

Section 812(e) (1) (A) allows a marital deduction equal to the value of any interest in property which passes or has passed from decedent to his surviving spouse, to the extent that such interest is included in determining the value of the gross estate. Section 812(e) (1) (E) (ii) provides that in arriving at the value of such a property interest, where the property or interest "is incumbered in any manner * * * such incumbrance * * * shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined." Both parties agree that the proceeds of the policy here involved are includible in the gross estate of the decedent, and, section 812(e) (3) (G) provides that, for the purposes of this subsection, an interest in property shall be considered as passing from the decedent to any person if "such interest consists of proceeds of insurance upon the life of the decedent receivable by such person."[5]

---

[3] SEC. 812.   NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

* * * * * * *

(e) BEQUESTS, ETC., TO SURVIVING SPOUSE.—

(1) ALLOWANCE OF MARITAL DEDUCTION.—

* * * * * *

(E) Valuation of interest passing to surviving spouse.—In determining for the purposes of subparagraph (A) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this subsection—

* * * * * *

(ii) where such interest or property is incumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such incumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined.

[4] Paragraph 5 (c) of the petition (denied in part by respondent's answer) and the briefs for both parties state that the proceeds of this policy were $10,029.40.

[5] The illustration contained in Senate Report No. 1013 (Part 2), 80th Cong., 2d Sess. (1941–1 C. B. 331, 335), which respondent argues on brief infers an affirmative direction by decedent if the payment of the incumbrance by the estate is to be included as an interest passing to the surviving spouse, points more to the definition of an interest passing from decedent contained in subparagraph (A) of section 812 (e) (3). In any event we consider it immaterial whether the proceeds of the policy received by the surviving spouse herein are to be considered as a primary interest or as an additional interest. She was entitled to, and did receive such proceeds as the result of having been designated beneficiary by decedent.

We agree with respondent that the assignment of the policy here involved as security for the decedent's indebtedness to the bank constitutes an incumbrance within the meaning of the statute. Having reached that conclusion our next step is to determine the value of the property interest to be allowed as a marital deduction. In so doing the statute requires that for the purpose of arriving at the value of the property interest which passed to the surviving spouse such incumbrance shall be taken into account "in the same manner as if the amount of a gift to such spouse of such interest were being determined."

There is apparently a paucity of authorities determining how a gift to a spouse would be determined under the circumstances here presented. In *D. S. Jackman*, 44 B. T. A. 704, the petitioner transferred to his wife, without consideration, shares of stock which had been pledged as collateral security for his debt. The stock had a value slightly in excess of the indebtedness. It was there held that the value of the gift was an amount equal to the excess of the value of the stock over the indebtedness. In *Commissioner v. Proctor*, 142 F. 2d 824, certiorari denied 323 U. S. 756, the Fourth Circuit Court of Appeals affirmed on this point (reversed and remanded on another point) a Memorandum Opinion of this Court (*Frederic W. Proctor*, Docket No. 111015, entered July 6, 1943), wherein a similar conclusion was reached on authority of the *Jackman* case. In its discussion of this point, the Fourth Circuit said:

The question which confronts us at the outset is how property which has been pledged or assigned as security for a debt and is afterwards made the subject of gift should be valued for the purposes of the gift tax (i. e. whether the debt should be deducted from the value of the property or not) ; but the Tax Court has decided that the value for purposes of gift taxation is the excess of the value of the property pledged or assigned over the debt. Jackman v. Commissioner, 44 B. T. A. 704. The rule is not one of law, but one for arriving at a conclusion of fact, the value of the property given, and, in view of the fact that there is nothing here to show that the debt could have been paid otherwise than out of the trust property, we cannot say that the Tax Court was guilty of error of law in following it in this case. * * *

While the Fourth Circuit did not specifically rule that where the debt for which the property was pledged could have been paid otherwise than out of the pledged property the value for gift tax purposes would be the value of such property unreduced by the debt, we think this is fairly to be inferred. In the *Jackman* case, the donor's net worth at the time of the gift was such that the debt could not then have been paid otherwise than out of the pledged property, and, in the *Proctor* case there was no showing that the debt could have been paid otherwise than out of the pledged property. Those cases therefore held that the value of the gift was the amount

by which the value of the pledged property exceeded the debt. Here the indebtedness of the decedent, for which the insurance policy was pledged as collateral, not only could have been but was paid out of property of the estate, and the beneficiary received the full proceeds of the insurance policy. These facts make the *Jackman* and *Proctor* cases distinguishable. Cf. *Estelle May Affelder*, 7 T. C. 1190.

Considering all the facts and circumstances here presented, it is our opinion that, if the amount of a gift to the surviving spouse were being determined, the amount of the gift would be the entire proceeds of the policy. The administrator was legally obligated to pay off all of the decedent's debts (Cf. *McClanahan* v. *Davis*, 49 U. S. 169, 178), including the debt in question, and, as hereinafter shown, the widow, as beneficiary of the insurance policy, could have required that the indebtedness be paid out of other assets of the estate, or that she be subrogated to the claim of the bank against the estate, in which event, the estate being solvent, she would have received the payment.

Under the provisions of West Virginia Code, 1949, section 3359,[6] and similar statutes in other jurisdictions, as between the estate and the named beneficiary, the insurance proceeds are the property of the latter. *Bennett* v. *Bennett*, 135 W. Va. 3, 62 S. E. 2d 273.[7] The estate owed the debt to the bank. Cf. *In re Stafford's Estate*, 101 N. Y. S. 2d 904, affirming 98 N. Y. S. 2d 714. The beneficiary did not. She owned the right to the proceeds of the policy subject to any liens thereon. This right is not to be minimized by calling the interest contingent throughout the life of decedent. The statute provides the contrary. *Bennett* v. *Bennett, supra.*

Upon the death of decedent a right of present enjoyment of the proceeds accrued to the beneficiary. That right extended to the whole of the policy. It had never been diminished in amount. The only incumbrance upon it was a pledge as collateral security. "Collateral means secondary or subsidiary. Such security is to be resorted to only in the event that the pledgor fails to perform the principal

---

[6] Sec. 3359. Rights of Creditors as to Policies in Favor of Another Person and Policies Assigned.—If a policy of insurance, whether heretofore or hereafter issued, is effected by any person on his own life or on another life, in favor of a person other than himself, or, except in cases of transfer with intent to defraud creditors, if a policy of life insurance is assigned or in any way made payable to any such person, the lawful beneficiary or assignee thereof, other than the insured or the person so affecting such insurance, or his executors or administrators, shall be entitled to its proceeds and avails against the creditors and representatives of the insured and of the person effecting the same, whether or not the right to change the beneficiary is reserved or permitted, and whether or not the policy is made payable to the person whose life is insured if the beneficiary or assignee shall predecease such person : * * *

[7] See *Dellefield* v. *Block*, 40 F. Supp. 616 ; *Massachusetts Linotyping Corporation* v. *Fielding*, 312 Mass. 147, 43 N. E. 2d 521 ; *Chatham Phenix National Bank & Trust Co.* v. *Crosney*, 251 N. Y. 189, 167 N. E. 217 ; *United States* v. *Sullivan*, 19 F. Supp. 695, affd. 95 F. 2d 1021 ; *In re Messinger*, 29 F. 2d 158 ; *In re Weick*, 2 F. 2d 647 ; *In re Rose*, 24 F. 2d 253 ; *In re Firestone*, 2 F. Supp. 96.

contract. A pledge as collateral security *ex vi termini* excludes the idea that the thing pledged is designed as the primary source from which payment is to be made." *Barbin* v. *Moore, supra*, p. 374; *Wickert* v. *Folk*, 250 Wis. 194, 26 N. W. 2d 540; *Crump* v. *McMurtry*, 8 Mo. 408; *Third National Bank* v. *Hall*, 30 Tenn. App. 586, 209 S. W. 2d 46; *Ex parte Boddie*, 200 S. C. 379, 21 S. E. 2d 4; *In re Alexander's Estate*, 273 N. Y. S. 984; *Butler* v. *Gage*, 14 Col. 125, 23 Pac. 462.

Under the circumstances here present it is generally held that if the proceeds of the policy in question had been employed to discharge the indebtedness the beneficiary would have become subrogated to the lender's right to enforce a claim against the estate in an amount equal to the loan. *Caroline D. Thompson*, 22 T. C. 507.[8] So being, the value of the interest of Caroline A. Gwinn under the circumstances here presented, was equal to the value of the policy at decedent's death.

Accordingly, under the facts and circumstances here presented we have concluded, and so hold, that the entire amount of the proceeds of policy No. 235883 qualifies for the marital deduction allowed by section 812 (e) of the Internal Revenue Code of 1939.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[8] See also *Smith* v. *Coleman, supra; Barbin* v. *Moore, supra; Ex parte Boddie, supra; In re Stafford's Estate, supra; Chamberlin* v. *First Trust & Deposit Co.*, 15 N. Y. S. 2d 168; *Reinhold's Estate*, 68 N. Y. S. 2d 347; *In re Jones' Estate*, 81 N. Y. S. 2d 386; *In re Cumming's Estate*, 105 N. Y .S. 2d 104; *In re Scheer's Will*, 114 N. Y. S. 2d 288, affd. 118 N. Y. S. 2d 752; *In re Gallagher's Will*, 57 N. Mex. 112, 255 P. 2d 317; *Russell* v. *Owen*, 203 N. C. 262, 165 S. E. 687; *Farracy* v. *Perry*, Tex. Civ. App. 1928, 12 S. W. 2d 651; *Blair* v. *Baker*, 196 Md. 242, 76 A. 2d 129; *Schum* v. *Lawrenceburg National Bank*, 314 Ky. 297, 234 S. W. 2d 962; *Mutual Life Insurance Co. of New York* v. *Illinois National Bank of Springfield, Ill.*, 34 F. Supp. 206, affd. sub nom. *Mackie* v. *Mackie*, 126 F. 2d 469; *Fidelity Union Trust Co.* v. *Phillips*, 5 N. J. Super. 529, 68 A. 2d 574, affd. 4 N. J. 28, 71 A. 2d 352. Cf. *Fitzsimmons* v. *American Union Life Insurance Co.*, 234 Mo. App. 878, 133 S. W. 2d 680.